IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

_____

| | |
|---|---|
| **WILLIS C. DEVORE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **SWISS KRONO LLC, a/k/a** | ) |
| **SWISS KRONO USA, INC.,** | ) |
| | ) |
| Defendant. | ) |

Civil Action No.  1:26-cv -2855-SAL-MHC

_____)

## COMPLAINT AND JURY DEMAND

**NOW COMES PLAINTIFF**, Willis C. Devore ("Plaintiff"), by and through

undersigned counsel, brings this civil action against Defendant Swiss Krono LLC a/k/a

Swiss Krono USA, Inc. ("Defendant" or "Swiss Krono") for race discrimination,

discriminatory restructuring, and discriminatory failure to promote/select under Title VII

of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. This is a race-discrimination case

in which Defendant used a restructuring process to deny a long-tenured Black manager a

fair opportunity to obtain the restructured Quality Manager role and then selected a white

employee for that role after Plaintiff resigned. Plaintiff alleges as follows:

## I. PARTIES

1.      Plaintiff Willis C. Devore is an African American / Black male and a

resident of Barnwell County, South Carolina.

1

2. Plaintiff's mailing address as reflected in his administrative charge is 871 Fairway Lane, Barnwell, South Carolina 29812.

3. Defendant Swiss Krono LLC is an employer doing business in Barnwell County, South Carolina, with a facility located at 810 Technology Drive, Barnwell, South Carolina 29812.

4. Defendant employed Plaintiff at its Barnwell, South Carolina facility.

5. At all relevant times, Defendant employed at least fifteen employees and was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

6. At all relevant times, Defendant was engaged in an industry affecting commerce within the meaning of Title VII. At all relevant times, Plaintiff's employment relationship with Defendant constituted a contractual relationship within the meaning of 42 U.S.C. § 1981, including the making, performance, modification, and termination of the employment relationship and the enjoyment of all benefits, privileges, terms, and conditions of that relationship.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1981.

8. This Court has supplemental jurisdiction over Plaintiff's related South Carolina Human Affairs Law claim under 28 U.S.C. § 1367 because it arises from the same nucleus of operative facts as Plaintiff's federal claims. Plaintiff's Title VII and § 1981 claims arise from the same nucleus of operative facts, including Defendant's

2

restructuring of Plaintiff's position, delay in considering Plaintiff for the restructured Quality Manager role, and selection of a white employee for that role.

9. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 because the unlawful employment practices occurred in Barnwell County, South Carolina; relevant employment records are maintained or administered in South Carolina; and Plaintiff would have continued working in South Carolina but for Defendant's unlawful employment practices.

10. This case should be assigned to the Columbia Division of the United States District Court for the District of South Carolina because the events giving rise to these claims occurred in Barnwell County, South Carolina.

### III. ADMINISTRATIVE EXHAUSTION

11. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 415-2026-00750.

12. In his EEOC charge, Plaintiff alleged discrimination arising from Defendant's restructuring of his position, the delayed hiring/selection process, and Defendant's selection of a white employee for the new Quality Manager role. Plaintiff brings this action based on race discrimination, discriminatory restructuring, and discriminatory failure to promote/select.

13. The EEOC issued a Determination and Notice of Rights on April 16, 2026.

14. The EEOC Notice informed Plaintiff that he had the right to sue Defendant on the charge and that any federal lawsuit had to be filed within ninety days of receipt of the Notice.

15. This action is filed within ninety days of Plaintiff's receipt of the EEOC Notice of Right to Sue.

16. Plaintiff has satisfied all conditions precedent to bringing this civil action, or such conditions have otherwise occurred, been waived, or been excused.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Qualifications

17. Plaintiff was employed by Defendant for approximately eighteen years.

18. Plaintiff worked as a Quality Assurance and Development Manager.

19. During his long tenure, Plaintiff developed substantial knowledge of Defendant's quality assurance processes, development functions, manufacturing operations, internal systems, personnel, and customer requirements.

20. Plaintiff was qualified for his position and for the restructured Quality Manager role described below.

21. Plaintiff performed the duties of his position satisfactorily and had the experience, institutional knowledge, and qualifications necessary to continue in a quality-management leadership position.

22. Plaintiff is African American / Black and is a member of a protected class under Title VII and the South Carolina Human Affairs Law protected from race discrimination under Title VII and 42 U.S.C. § 1981.

### B. Defendant Restructured Plaintiff's Position

4

23. On or about June 17, 2025, Defendant's Human Resources personnel and executive leadership informed Plaintiff that his existing position was being restructured into a new Quality Manager role.

24. Defendant told Plaintiff that he could apply for the new Quality Manager role.

25. Defendant also told Plaintiff that the position would be open to internal and external candidates.

26. Defendant advised Plaintiff that his existing position would be eliminated or materially altered as part of the restructuring.

27. The newly restructured role combined responsibilities that had previously been handled separately and imposed significantly increased responsibilities.

28. Defendant did not offer Plaintiff increased compensation commensurate with the increased duties and expectations associated with the restructured role.

29. Plaintiff applied for the new Quality Manager role immediately and in good faith.

30. Plaintiff was qualified for the new role based on his approximately eighteen years of service, his existing quality assurance and development experience, his knowledge of Defendant's operations, and his familiarity with the Barnwell facility.

C. **Defendant Delayed Plaintiff's Opportunity to Compete**

31. After Plaintiff applied, Defendant did not promptly interview him.

32. For several months, Defendant's Human Resources personnel repeatedly told Plaintiff that the executive team was too busy to conduct interviews.

33. During this period, Plaintiff was left in limbo with no meaningful communication about his employment status, future position, or opportunity to compete for the restructured role.

34. Defendant's prolonged delay deprived Plaintiff of a fair and timely opportunity to compete for the Quality Manager role.

35. Defendant's delay placed Plaintiff in an untenable position: his existing role was being eliminated or restructured, the replacement role was not being timely filled, and Defendant would not give Plaintiff a clear answer about whether he would continue to have employment.

36. Defendant's conduct caused Plaintiff reasonably to believe that he had no secure future with Defendant and that the application process was not being administered fairly.

**D. Plaintiff's Resignation Following the Discriminatory Restructuring Process**

37.     Defendant's prolonged delay, lack of clarity, and refusal to provide Plaintiff a fair and timely opportunity to compete for the restructured Quality Manager role caused Plaintiff to seek other employment.

38.     Plaintiff ultimately resigned on or about September 12, 2025.

39.     Plaintiff did not lose wages as a result of the resignation.

40.     Plaintiff alleges that Defendant's discriminatory restructuring and selection process deprived him of equal terms, conditions, and privileges of employment, including a fair opportunity to compete for continued advancement and leadership at Swiss Krono.

41.     Plaintiff pleads his resignation as part of the factual background and consequences of Defendant's discriminatory restructuring and failure to select him, not as the sole basis for liability.

**E. Defendant Hired a White Male for the New Role After Plaintiff Resigned**

42.     Immediately after Plaintiff resigned, Defendant began interviewing candidates for the Quality Manager role.

43.     Defendant hired a white male employee for the new Quality Manager role on or about September 29, 2025.

44.     The white male selected for the role lacked Plaintiff's relevant experience and institutional knowledge.

45.     Defendant nevertheless hired the white male into the Quality Manager role.

7

46.     Defendant treated the white male employee more favorably than Plaintiff by giving him a fair opportunity to be considered and selected for the Quality Manager role after delaying and effectively denying Plaintiff a meaningful opportunity to compete.

47.     Defendant's treatment of Plaintiff was consistent with a broader pattern in which Black employees were denied advancement, compensation, job security, and fair selection processes while similarly situated white employees were treated more favorably.

48.     Defendant's stated reasons for delaying Plaintiff's interview and failing to provide Plaintiff a fair opportunity to compete were not the true reasons for its actions.

49.     Defendant's explanation that executives were too busy to interview Plaintiff for several months was inconsistent with Defendant's ability to begin interviewing immediately after Plaintiff resigned.

50.     Defendant's conduct supports a reasonable inference that Defendant delayed the interview process and structured the selection process to avoid selecting Plaintiff and to replace him with a white employee.

51.     Defendant's actions caused Plaintiff loss of career opportunity, loss of equal employment opportunity, emotional distress, humiliation, inconvenience, and other damages. Plaintiff does not allege lost wages.

**F. Related Pattern Evidence**

52.     Defendant's treatment of Plaintiff was not isolated.

53.     Other Black employees, including long-tenured Black employees, experienced unfavorable treatment concerning pay, promotion, restructuring, layoff, or job security.

54.     One African American female employee, Petula Brunson-Riley, reportedly had approximately nineteen years of service as a Customer Service Representative and was selected for termination during a reduction in force while white female employees with significantly less tenure and, in some cases, no prior customer-service experience were retained.

55.     Another African American employee, Shontavian L. Drake, has an administrative matter that remains under investigation in South Carolina. She reportedly asserted that she was denied advancement and increased compensation while a white male employee with less payroll experience received payroll responsibilities, promotion, and a substantial salary increase. Plaintiff does not assert claims on Ms. Drake's behalf in this complaint, but alleges these facts as pattern, background, and comparator evidence relevant to Defendant's treatment of Black employees.

56.     Plaintiff will seek discovery concerning Defendant's employment decisions affecting Black employees, including restructuring, promotion, compensation, retention, layoff, and replacement decisions.

## V. CAUSES OF ACTION

### Count I — Race Discrimination Under Title VII

57.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 56 as if fully set forth herein.

58.    Title VII prohibits an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment because of race.

59.    Plaintiff is African American / Black and therefore belongs to a protected class.

60.    Plaintiff was qualified for his existing position and for the restructured Quality Manager role.

61.    Defendant subjected Plaintiff to adverse employment actions, including but not limited to restructuring his position, denying him a fair and timely opportunity to compete for the new Quality Manager role, delaying the interview process for months, depriving him of equal terms, conditions, and privileges of employment, and selecting a less experienced white employee for the role.

62.    Defendant treated Plaintiff less favorably than similarly situated employees outside his protected race.

63.    Defendant's stated reasons for its actions were false, inconsistent, incomplete, or pretextual.

64.    Plaintiff's race was a motivating factor in Defendant's adverse employment actions.

65.    Defendant's conduct violated Title VII.

66.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered loss of career opportunity, loss of equal employment opportunity, emotional

distress, humiliation, inconvenience, and other compensable injuries. Plaintiff does not allege lost wages.

### Count II — Discriminatory Failure to Promote / Failure to Select Under Title VII

67.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 66 as if fully set forth herein.

68.    Defendant created or announced a restructured Quality Manager role for which Plaintiff was qualified.

69.    Plaintiff applied for the Quality Manager role immediately and in good faith.

70.    Defendant did not provide Plaintiff a fair and timely opportunity to interview or compete for the role.

71.    Defendant delayed Plaintiff's application process for months while his employment future remained uncertain.

72.    After Plaintiff resigned, Defendant promptly began interviewing and selected a white male employee for the Quality Manager role.

73.    Plaintiff was not selected under circumstances giving rise to an inference of race discrimination.

74.    Plaintiff's race was a motivating factor in Defendant's failure to promote, select, or fairly consider Plaintiff for the Quality Manager role.

75.    Defendant's conduct violated Title VII.

76.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages recoverable under Title VII.

11

### Count III — Discriminatory Restructuring and Denial of Equal Employment Opportunity Under Title VII

77. Plaintiff realleges and incorporates by reference Paragraphs 1 through 76 as if fully set forth herein.

78. Defendant used a restructuring process to place Plaintiff's existing role at risk while denying him a fair and timely opportunity to compete for the restructured Quality Manager role.

79. Defendant's months-long delay, lack of communication, denial of a fair selection process, and later selection of a white employee deprived Plaintiff of equal terms, conditions, and privileges of employment.

80. Defendant's restructuring and selection process was administered in a manner that treated Plaintiff less favorably than similarly situated employees outside his protected race.

81. Plaintiff's race was a motivating factor in Defendant's discriminatory restructuring and denial of equal employment opportunity, in violation of Title VII.

82. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages recoverable under Title VII, excluding lost wages.

### Count IV — Race Discrimination Under 42 U.S.C. § 1981

83. Plaintiff realleges and incorporates by reference Paragraphs 1 through 82 as if fully set forth herein.

84. Section 1981 protects Plaintiff's right to make, perform, modify, and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship, without race discrimination.

85. Plaintiff's employment relationship with Defendant was contractual in nature within the meaning of § 1981.

86. Defendant intentionally discriminated against Plaintiff because of race by restructuring his position, denying him a fair and timely opportunity to compete for the Quality Manager role, depriving him of equal employment opportunity, and selecting a less experienced white employee for the role.

87. Defendant's race discrimination impaired Plaintiff's enjoyment of the benefits, privileges, terms, and conditions of his employment relationship.

88. Defendant's conduct violated 42 U.S.C. § 1981.

89. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages recoverable by law.

## Count V — Failure To Promote or Select Race Discrimination Under 42 U.S.C. § 1981

90. Plaintiff realleges and incorporates by reference Paragraphs 1 through 89 as if fully set forth herein.

91. Defendant created or announced a restructured Quality Manager role for which Plaintiff was qualified.

92. Plaintiff applied for the Quality Manager role immediately and in good faith.

93.    Defendant denied Plaintiff a fair and timely opportunity to interview or compete for the role and selected a white employee instead.

94.    Defendant's failure to promote, select, or fairly consider Plaintiff for the Quality Manager role was because of Plaintiff's race and impaired Plaintiff's employment relationship in violation of 42 U.S.C. § 1981.

95.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages recoverable by law.

## VI. DAMAGES

96.    As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered and continues to suffer damages, including but not limited to:

a. Loss of career opportunity;

b. Loss of equal employment opportunity;

c. Loss of advancement opportunity;

d. Emotional distress;

e. Humiliation, embarrassment, inconvenience, and loss of enjoyment of life;

f. Out-of-pocket losses, if any, other than lost wages;

g. Attorney's fees and costs; and

h. Other legal and equitable damages recoverable by law.

97.    Plaintiff does not allege lost wages, back pay, front pay, lost benefits, or lost bonuses in this action.

14

98.     Defendant acted intentionally, willfully, maliciously, recklessly, and/or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages to the extent permitted by law.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award the following relief:

1.  A declaration that Defendant's conduct violated Title VII, the South Carolina Human Affairs Law, and 42 U.S.C. § 1981;

2.  Compensatory damages for emotional distress, humiliation, inconvenience, loss of equal employment opportunity, loss of advancement opportunity, and other non-economic injuries;

3.  Punitive damages to the extent permitted by law;

4.  Prejudgment and post-judgment interest to the extent permitted by law;

5.  Reasonable attorney's fees, litigation expenses, and costs;

6.  Equitable and injunctive relief, including appropriate remedial employment practices, record correction, and non-retaliation protections;

7.  Trial by jury on all issues so triable; and

8.  Such other and further relief as the Court deems just and proper, excluding lost wages, back pay, front pay, lost benefits, and lost bonuses.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 15, 2026                              Respectfully submitted,

HKM EMPLOMENT ATTORNEYS

By:/*s/ Casey Martens*
Casey Martens
**HKM Employment Attorneys, LLP**
Federal Bar No.: 12812
3344 Peachtree Road NE, Suite 800, Office #35
Atlanta, Georgia 30326
(404) 777-9652
cmartens@hkm.com

GILLIARD PLLC
Gerald Gilliard, (applying pro hac vice)
**Gilliard PLLC**
VSB No. 700094
13800 Coppermine Road
Herndon, Virginia 20171
(202) 246-5645 (telephone)
(202) 478-1786 (facsimile)
ggilliard@gmail.com (email)

*Counsel for Plaintiff Willis C. Devore*

16